UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MERSED BEBANIC,

    Defendant.
_____/

Case No: 18-20680

Hon: Paul D. Borman

| | |
|---|---|
| ADRIANA N. DYDELL<br>Assistant United States Attorney<br>211 West Fort Street, Suite 2001<br>Detroit, Michigan 48226-3211<br>(313) 226-9125<br>adriana.dydell@usdoj.gov | ROBERT S. HARRISON<br>Attorney for Defendant<br>40950 Woodward Ave., Ste. 100<br>Bloomfield Hills, MI 48304<br>248-283-1600<br>rsh@harrisonplc.com |

**DEFENDANT'S EMERGENCY MOTION FOR
COMPASSIONATE RELEASE PURSUANT TO 18 USC § 3582**

Now Comes the Defendant, Mersed Bebanic, by and through his attorney, Robert S. Harrison of Robert Harrison & Associates, PLC, and respectfully requests that This Honorable Court issue an order granting compassionate release from custody pursuant to 18 USC § 3582(c)(1)(A) to allow Mr. Bebanic to serve the remainder of his sentence in home confinement under the authority of 18 USC § 3624, which would allow him to receive proper and appropriate care for the ruptured Achilles tendon injury he suffered on August 1, 2020. This Motion is neither a disguised Motion for Rehearing, nor a second attempt to obtain relief for

legal issues already litigated. This Motion is not based on the COVID-19 pandemic, but rather, based around a serious untreated injury that occurred seventeen (17) days after This Honorable Court denied Mr. Bebanic's Motion for Compassionate Release based on COVID-19 claims of obesity and hypertension. Those conditions are not the basis of this motion.

The instant Motion is based on the seriousness of Defendant's injury and the total lack of medical care due to the March 31, 2020 Lock Down at FCI Milan which has denied Defendant any physical therapy or other modalities to treat his injury, leaving him wheel chair-bound.

Due to the serious nature of Defendant's injury and the lack of any care, Defendant also respectfully requests that this Honorable Court issue an expedited scheduling order regarding any responses and replies to this Motion.

Pursuant to LR 7.1, Defense counsel contacted Government counsel seeking concurrence in this Motion.   Concurrence was denied on October 6, 2020.

                                            Respectfully submitted,

                                            */s/ Robert S. Harrison*____
                                            Robert S. Harrison (P14691)
                                            Robert Harrison & Associates, PLC
                                            Attorney for Mersed Bebanic
                                            40950 Woodward Ave, Suite 100
                                            Bloomfield Hills, MI 48304
Dated: October 23, 2020              (248) 283-1600

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MERSED BEBANIC,

    Defendant.

Case No: 18-20680

Hon: Paul D. Borman

_____/

## BRIEF IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 USC § 3582

### Introduction

On August 1, 2020, Mersed Bebanic ruptured his right Achilles tendon during recreation time at FCI Milan. He was taken to the FCI Milan Clinic and then to the Emergency Department at St. Joseph Mercy Ypsilanti hospital the same day, where the diagnosis of a ruptured right Achilles tendon was confirmed by ultrasound and his leg was placed in a splint and a prescription for physical therapy was written. On August 19, he had a follow-up visit with Dr. Schueller, an orthopedic surgeon, who recommended non-operative treatment. Rather than surgery, Dr. Schueller chose to have Mr. Bebanic's right ankle immobilized in a

boot for three weeks more and Dr. Schueller wrote a prescription for physical therapy and gave it to the guard who accompanied Mr. Bebanic.

Thereafter, Mr. Bebanic sought the assistance of the medical staff at FCI Milan. The medical staff simply instructed Mr. Bebanic to keep his ankle immobilized for up to 8 weeks and then gradually put weight on the ankle. No further instructions were given. Mr. Bebanic was given an exercise strap but he was given no informative instructions on how to use it. Mr. Bebanic was wheelchair bound until approximately the first week in October when he began on his own to try some weight bearing with crutches, without instruction. After these occasional attempts to engage in weight bearing, Mr. Bebanic returns to being wheelchair bound.

As of today's date, Mr. Bebanic has not been provided with any physical therapy or any additional treatment, or updated treatment plan. His ankle has been immobilized in a walking boot with a 30 degree angle, with no means to gradually change the position of the ankle, and no guidance on how to begin safe weight bearing. Apparently, because of the on-going pandemic Lock Down on March 31, 2020, there is no physical therapy offered by FCI Milan to allow Mr. Bebanic to follow any treatment plan necessary to properly heal a ruptured Achilles tendon without surgery. Mr. Bebanic is an active 37 year-old man. Without proper

2

treatment, he risks permanent damage to his Achilles Tendon and right ankle and an elevated chance of rupturing the tendon a second time **(See Exhibit 1, Dr. David Mendelson's Report).** Mr. Bebanic works in a very physical job, even though he owns his trucking company he works on holidays and at times in the middle of the night when necessary, driving trucks and making deliveries. Climbing into big rig trucks and braking and accelerating with his right foot requires a healthy right ankle and leg. Thus, Mr. Bebanic requests that This Court issue an order for his release to home confinement which would allow Mr. Bebanic to receive the proper treatment for his injury, and hopefully avoid permanent damage.

On Tuesday, October 20, Mr. Bebanic was able to use a tape measure and found that his right calf muscle was 2 inches smaller than his left calf muscle, as a result of his lack of physical therapy.

**Procedural History**

On June 15, 2020, Mr. Bebanic moved for relief to This Court, requesting that he be given compassionate relief or home confinement because of the COVID-19 pandemic, based on certain medical conditions (obesity, hypertension and GERDS) [Dkt. 19] On July 15, 2020, that motion was denied. Mr. Bebanic now brings the current motion before This Court because the injury in question

3

(ruptured Achilles Tendon) occurred after the previous motion was decided. Mr. Bebanic's ruptured Achilles tendon occurred on August 1, 2020, seventeen (17) days after This Court's Order denying his requested COVID-19 relief.

On August 5, 2020, Warden Hemingway visited Mr. Bebanic's unit. Mr. Bebanic spoke with the Warden about his injury and the Warden directed him to his Unit Team. His Unit Team had submitted paperwork the day before—August 4—for Mr. Bebanic to be transferred for home confinement under the CARES Act, according to his Unit Team. Mr. Bebanic's request was approved by the Warden approximately one week later. Mr. Bebanic assumed that he would receive timely treatment because his release date was pushed up to September 9, 2020. He was moved to C Unit for quarantine to ensure that he exhibited no symptoms of Coronavirus. On approximately August 20, 2020, Mr. Bebanic was removed from quarantine because—as his Unit Team informed him—the Regional Committee of the BOP rejected his approval for transfer to home confinement because the Unit Team apparently mistakenly requested release on COVID-19 grounds. On approximately August 27, Mr. Bebanic was told that the expectation was that he would be transferred to a halfway house on December 3, 2020, but there are no guarantees in this day of COVID-19.

We have no way of documenting his Unit Team's request, his approval for release or his being placed in quarantine nor denial by the North Central Regional Committee of the BOP because Mr. Bebanic's requests for such documents were ignored and no documents have been provided to him.

However, on September 20, 2020 Mr. Bebanic made a written request for Compassionate Release to Warden Hemingway because of his ruptured Achilles Tendon – which has left him wheel chair bound since his injury. Warden Hemingway denied his request in writing on September 23, 2020 "based on [Mr. Bebanic's] health issues" **(See Exhibit 2).** It was unclear to Mr. Bebanic or to his counsel if an email denial is a formal denial which would entitle Mr. Bebanic to appeal to the Regional Committee. However, that issue is moot because more than 30 days have elapsed since Mr. Bebanic's request on September 20, 2020.

## **Legal Authority**

This Court has the authority to reduce a Defendant's sentence and grant him compassionate release under 18 USC § 3582(c)(1)(A). The Court must find that (1) exhaustion of administrative remedies has occurred or that 30 days have elapsed since Mr. Bebanic's request to the Warden, there is  (2) " . . . an extraordinary and compelling circumstance . . ." to justify the modification of the sentence, and

5

(3) the Court must also consider the sentencing factors of 18 USC § 3553(a), and determine that the Defendant is not a danger to the safety of any other person or the community.

## Exhaustion of Administrative Remedies

Mr. Bebanic has satisfied the exhaustion of administrative remedies requirement because of the lapse of more than 30 days since he made a request to the Warden for Compassionate Release. **Exhibit 2** contains duplicate requests to the Warden for compassionate release.  One dated September 20, 2020 and the other dated September 21, 2020.  Mr. Bebanic was instructed to submit the September 21, 2020 request as a method to appeal to the Regional Director – which of course – it was not.

Nevertheless, it has been more than 30 days since Mr. Bebanic's request to the Warden, so he has satisfied his exhaustion of administrative remedies requirement.

## An Extraordinary and Compelling Circumstance

A literal plethora of cases have defined and interpreted the text of the First Step Act of 2018 which grants judges the authority based on "extraordinary and compelling reasons" to re-sentence defendants to home confinement and the policy

6

statements of the Sentencing Commission under Section 1B(1)113 do not preclude this Court from granting the requested relief to Mr. Bebanic. See U.S. v Beck 1:13-CR-186-62019 WL 2716505 at #4 (M.D.N.C. June 28, 2019).

The relief Mr. Bebanic seeks is modest under these facts: he suffered a serious injury—a ruptured Achilles tendon—which may lead to permanent impairment in the use of his right leg, and he wants and needs the ability to have that injury treated. When he consulted with Dr. Schueller on August 19, it was believed that Mr. Bebanic would be released to home confinement shortly, and that he would be able to continue with his treatment through follow-up appointments and physical therapy. Instead, six (6) days after he entered quarantine, his release to home confinement was canceled. He was not given a treatment plan that contemplated that he would have to treat his torn Achilles on his own, within FCI Milan, while outside physical therapy was unavailable due to the pandemic Lock Down. Now, Mr. Bebanic is not scheduled to be released possibly until he is transferred to a halfway house on December 3, 2020, and that date is not guaranteed either. Delaying proper treatment for his ruptured Achilles tendon for additional months, during the time frame for which rehabilitation is most critical, most probably will result in permanent physical harm in an otherwise young and able-bodied person. As mentioned previously, on Tuesday, October 20, 2020,

Mr. Bebanic was able to use a tape measure and found that his right calf muscle was 2 inches smaller than his left calf muscle.

The unusual circumstances of this injury being suffered during the COVID-19 pandemic without any treatment are extraordinary and compelling. Although Mr. Bebanic was seen by the Milan Health Clinic on August 1, 2020 – the day he ruptured his Achilles tendon – and on the same day taken to St. Joe, Ypsilanti ER to confirm his injury and splinted and given a prescription for physical therapy, he received no physical therapy. He was seen 3 weeks later by an orthopedic surgeon, given a boot and another prescription for physical therapy but again, he received no physical therapy. He had a couple visits to the Health Clinic unrelated to treatment, but to date, 83 days and counting since his injury, he has not received a single session of physical therapy. Mr. Bebanic does not argue that the Milan Clinic has done nothing. They took him to 2 different experts who ordered physical therapy. Mr. Bebanic argues that he has not received any of the treatment the experts ordered.

A ruptured Achilles tendon requires intense and guided physical therapy to properly heal, regardless of whether surgery is performed. It also requires a plan of care for the gradual manipulation of the affected ankle area to maintain leg function while the tendon heals. Without the necessary therapy and care, Mr.

8

Bebanic's leg will be at great risk for long-term if not permanent debilitation. Patients who do not receive the correct care can suffer a re-rupture of the tendon and can also suffer a permanent loss of strength and loss of use of the affected ankle and leg. **(See Exhibit 1 Dr. David Mendelson's Report)**

Normally, Mr. Bebanic would be able to receive physical therapy by appointment outside of FCI Milan. Instead, his ankle has simply been immobilized. FCI Milan has been on Lock Down since March 31, 2020. No physical therapy is offered inside of FCI Milan. The COVID-19 restrictions within FCI Milan have left him with no access to physical therapy, and he has not been given any direction on how to rehabilitate his ankle on his own. With COVID-19 showing no sign of going away, it is likely that Mr. Bebanic will continue to have no access to adequate care unless this Court grants Mr. Bebanic's requested relief. When considering the potential lasting damage of Mr. Bebanic's ruptured Achilles, Tendon compared to his status as a first-time offender who was given a 14-month sentence, the circumstances are truly extraordinary and compelling. It was not contemplated that Mr. Bebanic's sentence would possibly result in a permanent physical disability, simply because he was incarcerated at a time when his facility was unable to permit treatment for a very serious but not uncommon injury.

## Title 18 Section 3553(a) Factors

This Court applied the 18 USC § 3553 factors to Mr. Bebanic when it issued its order on July 15, 2020 denying Mr. Bebanic's first motion for compassionate release based on COVID 19 considerations. It found that these factors "undermined [Mr. Bebanic's] request for early release," for three reasons: one, the offense was very serious; two, a reduction of his 14-month sentence to five months would not provide just punishment for the offense; and three, the Court was concerned that early release would encourage Mr. Bebanic to re-offend. [Dkt. 29]

Mr. Bebanic respectfully argues that The Court should reach a different conclusion on this issue than it did on July 15.

When Mr. Bebanic was sentenced to 14-months, he was subject to the BOP policy under 18 USC § 3642(c)(1) which provides that a Defendant would be eligible to receive credit towards the service of his sentence if he displayed exemplary compliance with institutional disciplinary regulations. 18 USC § 3642(b)(1). Mr. Bebanic has displayed exemplary compliance. Credits would reduce his sentence by an additional 2 plus months.

In short, it was not expected that Mr. Bebanic would spend a full 14-months inside the walls of an institution like FCI Milan. Quite the opposite. Mr. Bebanic was recommended by this court to serve his time in a federal prison camp, a lower

10

security level of incarceration that is much less harsh, less punitive and more open than serving time at an FCI. Instead, the pandemic has not only forced Mr. Bebanic to serve time at a more restrictive facility, but the COVID-19 Lock Down restrictions within FCI Milan has made serving time there far more difficult and restrictive than it otherwise would have been. Now, with a ruptured Achilles tendon that remains untreated, the end result is that the seven and a half months Mr. Bebanic has now spent inside FCI Milan (from March 6, 2020 to October 23, 2020) have been exceedingly more punitive and serious than time spent inside a prison camp. This Court could certainly not have expected Mr. Bebanic to suffer potentially lifelong damage to his ankle when he was sentenced. Respectfully, today, reviewing the 3553(a) Factors individually requires a different result than this Court's July 15, 2020 Order.

There is no question that Mr. Bebanic committed a serious financial crime and there is no excuse for this behavior. However, since being charged, Mr. Bebanic quickly accepted full responsibility. He was indicted on October 11, 2018 and he pleaded guilty 5 weeks later on November 19, 2018. Moreover, he paid the Government every penny of the fruits of his crime (Almost $700,000) and he also paid more than $500,000 in penalties and interest at the time of his sentence.

This Court was very trusting of Mr. Bebanic prior to his incarceration. He was given a $10,000 personal bond, he was allowed to travel overseas to Bosnia to attend a funeral and his incarceration date was extended for a lengthy time because of serious family medical circumstances. In turn, Mr. Bebanic never violated the trust extended to him by this Court. He accepted responsibility for his wrongdoing. Likewise, while incarcerated, he has exhibited exemplary behavior and never been disciplined.

Given the unforeseeable ruptured Achilles Tendon injury, together with close to no medical treatments, Mr. Bebanic has suffered great pain never contemplated by anyone for close to three months now and counting, and his untreated injury could result in permanent disability as well as recurrence of the rupture.

Mr. Bebanic has received only one Orthopedic Surgeon examination – on August 19, 2020 and no more. Mr. Bebanic had a prescription written for him during that visit and as of today, he has received no physical therapy. Mr. Bebanic was given a stretching band but no instructions on how to use it. Mr. Bebanic was instructed to start weight bearing but never instructed on how: ball or heel first, length and frequency of weight bearing or any instructive details.

As Dr. Mendelson said:

> I find this to be suboptimal treatment at best. I do not see any documentation that shows any improvement in his Thompson test nor do I see any further documentation about motion, pain, or swelling. There is certainly great risk this individual of having poor outcome. This could range from weakness, which would increase his chances of falling and also potential re-rupture. It looks as if therapy had been advised but never provided for him and at the very least this would allow continuing monitoring of his general wellbeing and recovery.
>
> I see in your letter to me a question concerning use of a therapy strengthening band and weight bearing. Certainly, this requires proper instruction to make certain the patient is using it properly and not improperly. It is certainly possible that if this is used improperly, this could significantly worsen the outcome. **(Exhibit 1, page 2)**.

Regarding deterrence of others, you would have to be insane to replicate Mr. Bebanic's crimes if you knew you would have to repay every penny of unpaid tax back to the Government; pay more than $500,000 in penalties and interest, go to prison for 7 months and counting and be in danger of suffering lifelong consequences from lack of medical care for injury. Just telling his story would deter all but the most foolish from committing this crime.

On information and belief, the Presentence Report determined that Mr. Bebanic "has a low risk of recidivism and poses little danger to the public." That Presentence Report also found that the "need for protection of the public appears minimal."

From all of the above, Mr. Bebanic needs no further punishment nor is there any concern for recidivism and deterrence of others is satisfied. After what he has been through, both physically and emotionally, it's inconceivable that he

13

would ever commit this or any other crime again. And his anxiety over a possible re-rupture will linger for a very long time after he is released. Regarding risk to others, Mr. Bebanic was scored on August 4, 2020 as a "minimum risk." **(See Exhibit 4)**

## Medical Report

Dr. David Mendelson is a very highly regarded Orthopedic Surgeon whose clinic, Mendelson Kornblum, includes 20 Orthopedic Surgeons in total. Counsel has never met Dr. Mendelson, but was referred to him and has never before used him as an expert. Dr. Mendelson was provided with what was the complete Milan Health Clinic records **(See Exhibit 3a.)**, the St. Joseph Mercy Hospital/Ypsilanti records **(See Exhibit 3b.)**, and a description of Mr. Bebanic's one and only Orthopedic Surgeon progress notes contained in the Milan Clinic records and a summary of the medical records **(See Exhibit 3c.)**. He was also informed that as of September 24, 2020, Mr. Bebanic has not received any physical therapy, no instructions on how to use an exercise strap, nor how to properly engage in weight bearing. I have included Dr. Mendelson's Medical Report **(See Exhibit 1)**.

As noted in Dr. Mendelson's Medical Report, the latest medical report entry was September 9, 2020. At that time he expressed his professional opinion that

14

Mr. Bebanic's medical treatment was "suboptimal treatment at best" and "there is great risk . . . of having a poor outcome."

Those opinions were expressed as of the medical records ending on September 9, 2020.   We are now almost 6 weeks later and Mr. Bebanic's medical treatment has continued to be non-existent.   Although he has very recently attempted to do some weight bearing using crutches, he still is partially wheel-chair bound

## **Proposed Treatment Plan**

When released Mr. Bebanic would return to his home with his wife Carmen and two sons Ajdin – 11 years old and Alen – 9 years old.

His home address is 13146 Avalon, Shelby Township, Michigan 48315. He and his wife jointly own their home.   He is able to self-quarantine in the basement lower level without ever having to come up to the main level.

He will work, when physically able, at his solely owned trucking company – Century Trucking, 9700 Marine Highway, Casco, Michigan, which has been run by his father during his incarceration.

All of his health care needs will be provided for through HAP Health Insurance Company.

Finally, because Mr. Bebanic has no misconduct violations, and virtually no programs are readily available at FCI Milan due to the pandemic Lock Down, he should be entitled to 2 plus months of good time. By the time this Motion is decided Mr. Bebanic will most likely be deemed to have time incarcerated plus good time of approximately 10 and a half months, which would be in the rage of 75% of his 14 month sentence.

## Quarantine

Mr. Bebanic will require up to 14 days of quarantine. Currently, quarantine is lasting 21-28 days at Milan according to Mr. Bebanic. He was previously in quarantine at Milan in August of this year, but was pulled out after the BOP North Central Regional Director determined that the request for home confinement filed by Mr. Bebanic's Unit Team was faulty because it was filed as a Cares Act application and Mr. Bebanic was not suffering Cares Act eligible conditions.

Mr. Bebanic's home has a large basement area with a bedroom and with this Court's permission he can self-quarantine in his home. He can also be required to wear a GPS tether so there is no concern that he will not comply with quarantine and home confinement. If he is assigned to quarantine at Milan, he will spend 3-4 additional weeks at the FCI Milan.

## **Conclusion**

Mr. Bebanic requests that This Court issue an order granting him compassionate release to home confinement with home quarantine, and with a tether to complete his sentence as well as any supervised release that is appropriate.

It is also requested that This Court enter an Order expediting the Response and Reply.

Finally, counsel for Mr. Bebanic waives oral argument and requests that the Court order that there shall be no oral argument.

Respectfully submitted,

*/s/ Robert S. Harrison*____
Robert S. Harrison (P14691)
Robert Harrison & Associates, PLC
Attorney for Mersed Bebanic
40950 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Dated: October 23, 2020         (248) 283-1600

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 23, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notifications of such filing to all parties of record.

Dated: October 23, 2020         */s/ Robert S. Harrison*